Good morning, Your Honors. Pretty much, I think the case is fairly much briefed. I don't have a whole lot to add to what is in the brief. I had trouble finding what makes the case. I agree that under the jurisprudence that's developed, if it's excusable, basically you get a break on the deadline. And there's kind of a predicate set up for it because of the failure to serve notice of entry of the judgment promptly, according to what's put in the record. But then it looks like everybody was alerting you to the fact that this thing was winding up. So the judge says, well, you could have checked. Well, Your Honor, first of all, if you look at the record, there's nothing in the record. If you look at everything that the appellee indicates he did, there was no real, the first time the even appellant acknowledges, which there's no proof of service, nothing in the record, was July, I mean June the 7th, which is at least 11 or 12 days after the entry of judgment time had expired. So in other words, the court mailed out the notice of entry of judgment on May 26th, which was the 14th day after the court entered judgment. The defendant, or the appellee, I should say, indicates that the first time he actually claimed he gave me notice, which he says he mailed, and I don't say he didn't mail it, all I said was my office didn't receive it, was 11 days after that, or on June the 7th. What about the facts? Pardon me? What about the facts? Your Honor, there was no facts. He says that, but there's nowhere in the record where there's a fact. There's nowhere in the record. What he purportedly refers to as a facts to me was a facts to Mr. Sorrigan and a proof of service to Mr. Sorrigan. There is no facts, there is no proof of service to my office. He didn't send anything, any notice to my office about facts. The first time... So what you're saying is what he sent was just to your former client, not to you? He sent these to clients' subsequent attorney, not to me. It went to Mr. Michael Sorrigan, not to Mr. Sorrigan. There's no proof of service anywhere to my office. And, you know, and equitably speaking, I mean, this case has been up to this Court on two prior occasions, and on both occasions the Court noted that all the work that was done in this case was done by my office. They didn't consider any work done by anyone else. Everyone else that did work in this case got paid. It's interesting that my office was receiving notices from the Court and from their offense on a regular basis up until December 10th. After that, nothing else sent to my office. Now, bottom line is, you know, if we ignore the shaft and examine the grain, which this Court stated the last time this case was here, then, and if we get down to what's real, bottom line is the work was done, notice was late. Nothing came to my office until after the deadline had passed to initially submit the attorney's fee petition. I thought, I had thought that the city's lawyer said in a declaration in the record that he'd notified you by mail and fax May 17th. Well, he did say that, but there's no, he didn't, he never mentioned anything about there being a settlement. He never mentioned anything about there being an entry of judgment. Or, in fact, on May 17th, he couldn't have said that to me because the entry of judgment wasn't mailed by the Court until May 26th, so that's not even possible. Furthermore, as I said, Your Honor, my office had this case for over three years on appeal when the Court reversed and remanded the case from summary judgment back down to the lower court. The Court did not accept any excerpts of records. The only thing the Court accepted was the work that I did. The only work in this case... Looks like, actually, quite a lot of mail was sent to you, but you don't get your mail. Well, Your Honor... I'm with the mail. Yeah, I was having a problem with the mail, and that's well documented and declared. The mail was going everywhere. We didn't have a regular postman. It's declared that you often don't get your mail, but I don't remember an explanation of why. What's the problem? Well, it's just that we had different mailmen. Our mail would go across the street to the Housing Authority and vice versa. It just wasn't coming on a regular basis, and we just didn't get it all the time. We didn't get that piece of mail. Further, Your Honor, even assuming... And I'm not saying the Council didn't mail it. All I'm saying is we didn't get it. And even if you assume that we did get it, that mail wasn't mailed until, as I said, 11 to 12 days after the time it passed for filing the petition. Secondly, Your Honor, there wouldn't have been any prejudice. The defendant and the subsequent counsel for the plaintiff entered into an agreement and stipulated to extend the time for that attorney to submit his billing and his attorney's fees billing, which he did. And it wasn't until July that the judge approved the stipulation in order regarding their attorney's fees. Counsel, what are we supposed to do? It appears to me that the magistrate has found that you received a faxed copy of the letter on May 17th. Is that finding clearly erroneous? That finding is clearly erroneous. And what proof do you have that it's clearly erroneous, and how can we judge that? Well, the proof is I didn't get it. The proof is if you look at what counsel alleges he faxed to me, you look at it. But you told the magistrate judge that you didn't get it. I did tell him. The magistrate judge has said that the copy was faxed to your office. That's based on what counsel told her. Right, but now how are we supposed to judge... How are we supposed to overrule the magistrate on that point by finding that clearly erroneous? First of all, Your Honor, if you look at what counsel allegedly mailed to me as notice, there was no notice. It's not a notice. You look at the record, there's no... Counsel says that he did this or he mailed me that or faxed me that. There's no proof of service about any... On this fax, there's a cover sheet that has the printout from the fax machine that shows... I think it shows what number it was sent to. Was the number your fax machine number? Yes, I saw that. It is, but it has no... There's no discharge date or transmission date or receipt date. It says May 17th, 1147 AM. But Your Honor, but what is it that he's faxing? That's the other key. The fax machine printed out this... What was it that he... Okay, counsel, here's your problem. You... There's... It's clear that the city has provided us with a cover sheet that something was faxed to you on May 17th. Now, it says... The cover sheet says it relates to this case. They have attached a letter to you that purports to have been faxed on that day. So your position that in order to... In order for us to find that the magistrate is clearly erroneous, you're going to have to maintain the position that your office, which it shows that you must have received something that's addressed and it says the transmission was okay, that you received a cover sheet but attached that cover sheet with something other than the letter that purports to have been sent with it. Well, what I'm saying to you, Your Honor, is that the counsel for the defendant never, ever sent me anything saying there was an entry of judgment or this case had settled. Even if you look at what he purports to have sent me, it doesn't say anything about that. No, but it's true. He says I'm working with Sorgan to resolve the fee issues. He gave me his billing statements. If you want to get fees, send me the information. And then the judge says that's enough so it was reasonable that you should check the docket to see if a judgment's been entered. Your Honor, even at that point, if you assume that there's no judgment or no judgment entered, there was no entry of judgment and there was no mailing of the judgment until May 26. That's the bottom line. There was no indication. I mean, I think that there's... What rule requires the judgment to be served upon you? Well, no rule specifically requires it, but that's one of the things that whether or not I received it, that could be taken into consideration. So nine days later is when you should have received the notice. The notice would have been mailed out on May 26. That's the notice you sent me. The notice should have been mailed out on May 12th. But it wasn't mailed out until May 26. From the court to the defendant. You'd have a reasonable argument if you had filed your fees within two weeks of, within 14 days of the time when it was mailed out on May 26. But the first time counsel even acknowledges that or indicates that he tried to mail me something, the first time he says it is on June 7th, which is now 26 days later. So... But how many days after May 26th is it? How many days after May 26th is June 7th? That'd be 16 days. 16 days on 14 days nearly. So it's nearly a month later. And when did you finally get around to getting your fees in? I filed my fees about the 28th, I think, of June. Somewhere in there. And that would be more than, that would be some 30 or 40 days after you received the facts. Well, if that, if I received the facts, that would be true. But the facts still didn't indicate anything about servant or order of judgment. Thank you. Good morning, Your Honor. Well, I think you hit on a key issue. I'm not sure at this point whether Mr. Taylor is denying having received the 517 facts for which there's a... Make a couple things simpler for us. There's a procedure we have in Alaska, and I don't know if there's anything like this in California, you tell me. You file something in the case giving notice that you have a lien on fees when substituted counsel replaces you. You have something like that here? I'm not actually familiar with the exact procedure for filing a lien. And obviously that creates contractual rights that Mr. Taylor has. And I do want to turn to that point because, in fact, what we're doing here is we're dancing around an elephant. There's an elephant in this room. That elephant is that Mr. Taylor represented to the court in seeking to enlarge time. I didn't know. I didn't know. Well, in fact, he did know. Well, know what? He knew that the case was wrapping up. As far as I can tell, we don't have evidence in the record to show notice of the entry of judgment was served on Taylor on such-and-such a date, and he failed to file within 14 days of that date. So what Mr. Taylor did know, Your Honor, you're correct. He didn't have a — taking his word, he didn't have a notice of entry of judgment in his hand because it didn't arrive by the mail. Now, Mr. Taylor has gone to great lengths submitting half a dozen declarations saying, My mail — my mail never arrives. I never get my mail. I know it. Anybody's going to believe that your mail never arrives, but I don't think anyone's going to believe that your mail always arrives properly either. I invite the Court to look at the problem. All kinds of actions have been taken to address it. Oftentimes the mail was dropped. I write personal mail at home. There's not a week that goes by that I don't write misdelivered on a couple of letters and drop them back in the outgoing mail, and occasionally something doesn't come that should have come. The description that Mr. Taylor's declarations provide is that it's a regular, common occurrence. It's been a huge burden. They've taken action to address it. Now, my point is simply, Your Honor, if that, in fact, is taken as true, which I assume it is, then is it reasonable for Mr. Taylor to sit knowing as of with the date he filed his lien, March 22nd, the case is settling? As of May 13th, the date that Mr. Sorgan tells him, the case is settling. We're doing a fees thing. If you want to get your fees, you need to submit. Let me tell you, the city doesn't want to pay your fees. Between March 22nd, when he clearly knows that there has been a settlement conference, he goes to great lengths to say to the court, I haven't been receiving service. The district court made a mistake and took me off the proof of service list, so I don't know what's going on. Did Mr. Rolnick know on May 17th that the judgment had been entered? He did not, because it had not been mailed out by the clerk at that point. Correct. It was not until they got alerted, and that was mailed on May 26th, so it maybe got mailed on the 27th or 28th or 29th? Correct, Your Honor. And so what happens here is Mr. Taylor knows on March 22nd that there's been a settlement conference, that there's a settlement in the works. He takes no action for seven weeks other than filing the notice of lien on March 22nd. Then on May 13th, Mr. Sorgen tells him, we're settling the case. You just said that he did file a lien? He filed a lien on March 22nd, so that's as soon as the first settlement conference occurs, and it's clear that the matter is headed towards settlement and a new settlement conference is re-noticed for April 9th. So now he's on notice that it's settling. He does nothing for seven weeks other than file the notice of lien. On May 13th, Mr. Sorgen says, the case is settling. We're doing fees. You'll be entitled to fees. If you submit them, you should know that the city is opposing that. You're not hitting on exactly what bothers me. What bothers me is the notion that a lawyer should come in every morning and call over to the courthouse and prevail upon a clerk to go pick out the docket sheet for a particular case and tell them whether judgment is entered. That seems like an unreasonable burden since the case — I would agree with that, Your Honor. If those were the facts before us that Mr. Taylor had omitted to make a call one morning — Cases settle all the time without judgment being entered. A typical way that they settle is a stipulation for dismissal. Correct, Your Honor, although if that were the case, none of these discussions could have occurred. How could there have been a discussion between Mr. Sorgen — I don't — I don't agree with that. When I was in practice, we hardly ever settled cases with entry of judgment. We usually settled them with stipulations for dismissal, and we always tried to deal with counsel and replaced counsel in working out the terms of the dismissal. The discussions that Mr. Taylor himself relates to a duty that the city would have to pay him fees. The letter from Mr. Rolnick on May 17th says, if you want your fees, we're doing a process. The process that's being described there is clearly — He had filed for his fees at that time. Would his motion have been denied because it was unright, there being no judgment as yet? He would have had to seek an enlargement of time based on excusable neglect. And under those facts, Your Honor — I mean, if he had filed for his fees, if he had filed a motion for attorney's fees when he was given notice that the case was settling, would the motion have been denied because it was too early? No. There was no judgment yet. It depends which time you're talking about. He was — he was repeatedly informed. The first time. The first time. If he had — on May 13th — no, that would have been timely, Your Honor, because judgment had entered on May 13th. Mr. Sorgan didn't know that, but it had entered. It would have been timely then. It would have been timely four days later when Mr. Rolnick told him, you better get this to me immediately because time is running. We're on the clock. What was important was really not to get it to the lawyer who was saying, you better get it to me. What was important was to file a motion in court. No, he had to meet and confer first under the local rules. He never met and conferred. He never met and conferred. He never responded. After May 13th, he does nothing for three weeks until June 7th. This is not — this is not a situation where he didn't pick up the phone on Tuesday morning and call the court to see if the order had — the judgment had entered on Monday. This is a case where we're talking about seven weeks between March 22nd and May 13th. We're talking about no action again for three weeks until June 7th, no action for three weeks again until June 28th when his — when Mr. Sorgan calls him and says, hey, there's a judgment. And then — and then after he finds that out — May 28th is when he finds out that the judgment has been entered. And then it's not until July 7th that he actually files his request to shorten time. So that's another 10 days. Counsel, the city certainly didn't have a great deal of motivation to have Mr. Taylor file these — this request for fees on time. And Mr. Sorgan might well have thought that there wasn't great motivation on his part as well, since he might — he might have been concerned that a judge would would split fees — would split some kind of total pot of fees between them. So it seems to me that the two people that are — that are most responsible for giving him notice here, neither one of them really has strong incentive for providing him with notice. I could see that in the abstract. Mr. Taylor testifies in his own declaration that Mr. Sorgan tells him on May 13th, you better get on your stick because the city doesn't want to give you fees. Obviously, they're not going to want to give you free money. They're willing to pay your costs, by the way, but they're going to dispute having to pay your fees. So Mr. Sorgan is actually very cooperative. Mr. Sorgan takes additional action to make sure that this gets taken care of. It's Mr. Taylor who disappears from sight. Maybe he thinks his lien protects his rights. I don't know. I will say that the standard under Alaska Pipeline is not — is not one of sitting back and waiting for your mail to come. It's that once the clerk has entered judgment, you have a duty of diligence to find out. What does diligence mean? I agree with your doing everything within one's power, but it certainly means more than this. And I will point out that in terms of the application of the equitable factors, looking at the motion that Mr. Taylor ultimately files, he misstates the legal standard to the court. He says this is about not receiving mail. He submits a whole bunch of declarations about not receiving mail. It's not about not receiving mail. It's about what date judgment was entered. He pretends — or in weighing an abuse of discretion — I mean, one thing I look at as a district judge is who's being hurt by this? You know, what's the harm being done? It looks like the city had extended the time for another person to file their fee petition to a time after Attorney Taylor did. So the state knows it's got to deal with attorney's fees. And now it knows it's got — it still — it hasn't wound it up so it can say we're prejudiced because we got rid of all this and we can't budget or something. It's still in the process. And now they get his material and they still have to deal with the other man's attorney's fees. What's the prejudice that would make someone feel like extending the time to file this would cause someone harm? Well, prejudice is one factor in the test. And I don't think prejudice is actually applicable to the framework of facts before the court. So there is no prejudice? Well, there is prejudice in the sense that the city reached this agreement and met and conferred with Mr. Sorget and reached agreement with him on what his fees would be as a condition of entering the judgment. Mr. Taylor never presented his fees, his costs. They come in afterwards. They're enormous, which is in the record, so I guess I can say that. Prejudice isn't the size of the fee. The judge, once he decided whether to consider the fee, would then consider how much. But if the city had known that Mr. Taylor was going to submit fees of this amount, perhaps it wouldn't even have gone through the settlement process. There is prejudice there, but I will say that prejudice is only one of the five factors. Delay, reason for delay, and good faith are critical factors that are cited in the order. Is there anything in the record that would tell us what the prejudice was? I mean, you speculated they might not have entered into the settlement, but it looks like they settled with an agreement to pay reasonable attorney's fees and would have had to pay his fees. It would have been up to the court to figure out what they were. I would say, Your Honor, to be honest, I don't think in this factual context there could be prejudice one way or the other. I think there's a clear duty. I think that the standard of reasonable diligence is a standard that applies here. I don't think he met that standard. I don't think there's clear error in Judge James' decision, and I don't think that Judge Jenkins abused his discretion in making the finding he made. Judge James specifically cites the factors and goes through them and makes her finding, and Judge Jenkins goes through them again and makes his finding, and I simply think that that is clearly within his sound discretion. Thank you, Your Honor. Thank you, counsel. Just a couple things, Your Honor. I think we ran through all your time, didn't we? You can take another 30 seconds. I just wanted to say that the Bateman case is on point here. Mr. Rolnick told both the magistrate judge and the district court judge that he would give me notice specifically. He didn't do that. The work was done by my office. The time was extended for other counsels to work this out, and in fact, they didn't work out their attorney's fees until after I had submitted my petition for enlargement and was denied, and then the magistrate judge then approved the attorney's fees that defense allowed subsequent counsels to extend time to and pay them. The work in the case was done by me. The reason for the court is to make the parties whole. I'm just here to get done for the work that I did. I'm not trying to get anything else. No one's prejudiced. As counsel said, there is no prejudice. I didn't get notice until late, and I think fairness would say that I should be granted attorney's fees. Thank you, Your Honor. Counsel. Taylor v. San Francisco is submitted.
judges: Kleinfeld, Bybee, Whaley